[Cite as *Lakeview Loan Servicing, L.L.C. v. Kilpatrick*, 2026-Ohio-2740.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| LAKEVIEW LOAN SERVICING, LLC | : | |
| | : | C.A. No. 30733 |
| Appellees | : | |
| | : | Trial Court Case No. 2023 CV 04539 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| MARGUERITE LATETE KILPATRICK; | : | Court) |
| UNKNOWN SPOUSE OF | : | |
| MARGUERITE | : | **FINAL JUDGMENT ENTRY &** |
| LATETE KILPATRICK IF ANY; | : | **OPINION** |
| MONTGOMERY COUNTY OHIO | | |
| TREASURER; INRONGATE ESTATES | | |
| COMMUNITY ASSOCIATION | | |
| | | |
| Appellant | | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 17, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

CHRISTOPHER B. EPLEY, JUDGE

LEWIS, P.J., and HUFFMAN, J., concur.

**OPINION**

MARGUERITE LATETE KILPATRICK, Appellant, Pro Se
JOHN ROLLIN TARTER, JEFFERY HELMS, and PAUL NALEPKA, Attorneys for Appellee

EPLEY, J.

{¶ 1} Marguerite Latete Kilpatrick appeals from a judgment of the Montgomery County Court of Common Pleas, which confirmed the sale of her foreclosed property. For the following reasons, the trial court's judgment is affirmed.

**I. Facts and Procedural History**

{¶ 2} Kilpatrick was the owner of residential property located at 108 Barnside Drive in Englewood. To purchase the home, Kilpatrick borrowed $316,157.00 from Cardinal Financial Company, L.P. She signed a note in that amount and executed a mortgage to secure payment. Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Cardinal, subsequently assigned the mortgage to Lakeview Loan Servicing, LLC. Lakeview also obtained possession of the note.

{¶ 3} Kilpatrick defaulted on her loan obligations, and her account became delinquent. In August 2023, Lakeview sued Kilpatrick and others, claiming that Kilpatrick owed $308,995.07, plus interest at the rate of 2.99 percent, since February 1, 2023. Lakeview sought judgment on the note and foreclosure of the property. Kilpatrick was successfully served with the complaint on August 29, 2023, and she filed a timely answer. Kilpatrick represented herself throughout the litigation.

{¶ 4} Lakeview moved for summary judgment against Kilpatrick and for default judgment against others who had not responded to the complaint. On December 21, 2023, the trial court granted Lakeview's motions and entered a judgment and decree of

2

foreclosure. The court found that the note and mortgage were in default and that Lakeview was owed a principal amount of $308,995.07, plus interest on the principal amount at the rate of 2.99% per annum from February 1, 2023, and additional charges and advancements. The court ordered the equity of redemption be foreclosed and the property sold.

{¶ 5} Kilpatrick did not appeal the trial court's judgment. On several occasions, the property was scheduled for sale, but the sales were repeatedly cancelled.

{¶ 6} On August 20, 2024, Kilpatrick sought dismissal of the action due to a mandatory arbitration clause, but the trial court denied the motion. On April 7, 2025, Kilpatrick filed a "plea of tender and notice of special deposit," raising "sovereign citizen" arguments. She asserted that she had deposited $1.00 with the clerk of courts as "full satisfaction" of her delinquency and that the action should be dismissed. Two days later, Kilpatrick filed a notice of her Chapter 7 bankruptcy filing and automatic stay. After Lakeview objected to Kilpatrick's filings, the trial court struck them. Kilpatrick subsequently filed several other documents, attempting to show that she had tendered $1.00 and $21.00 to redeem the property.

{¶ 7} Ultimately, the property was sold to a third party in September 2025 for $258,821.00. On December 24, 2025, the trial court confirmed the sale and ordered distribution of the proceeds.

{¶ 8} Kilpatrick appealed from the trial court's judgment confirming the sale. At Kilpatrick's request, the trial court stayed its judgment for 30 days, but it indicated that any further stay needed to be sought from the court of appeals. We conditioned any further stay on Kilpatrick's posting of a $50,000 supersedeas bond in the trial court.

{¶ 9} Kilpatrick filed several additional motions in this court, seeking to stay execution of the trial court's judgment without posting a bond. We repeatedly declined to modify or

3

remove the bond requirement. On March 20, 2026, Kilpatrick filed two self-prepared documents: (1) a promissory note for $50,000 payable to the Montgomery County clerk of court and (2) a purported bill of exchange issued to the United States Treasury Department, which Kilpatrick tendered as a supersedeas bond. These documents were insufficient to satisfy the bond requirement. Kilpatrick has also filed a motion to vacate the confirmation of sale, which we denied.

{¶ 10} At this juncture, no bond has been posted, and the parties agree that Kilpatrick no longer possesses the property.

## II. Review of Confirmation of Sale

{¶ 11} Kilpatrick raises one assignment of error, claiming that the trial court "erred in permitting enforcement of possession and confirmation of sale in a matter that destroys the res, works forfeiture, clouds title, and defeats meaningful appellate review despite substantial unresolved equitable defects." Several of her appellate arguments focus on why she should remain in possession of the property pending appellate review (Kilpatrick was evicted after her brief was filed). She further contends that defects rendered enforcement of the judgment inequitable, namely (1) breaks in the chain of title and absence of a complete and continuous series of recorded assignments; (2) conflicting claims of servicing and interest between multiple entities; (3) irregularities in the foreclosure sale process, including discrepancies in the identity of the purchaser and transfer of title; and (4) uncertainty as to the real party in interest entitled to enforce the obligation.

{¶ 12} In response, Lakeview argues that Kilpatrick is not entitled to continued possession of the property or to a stay of execution. It further argues that Kilpatrick cannot collaterally attack the judgment of foreclosure by raising alleged defects in that judgment.

4

{¶ 13} Before turning to the issues Kilpatrick raises, we begin with a brief explanation of the two-step foreclosure process.

{¶ 14} The foreclosure process begins with a suit for foreclosure of the mortgage. This action "constitutes a proceeding for the legal determination of the existence of a mortgage lien, the ascertainment of its extent, and the subjection to sale of the property pledged for its satisfaction, and no more." *Wells Fargo Bank, N.A. v. Young*, 2011-Ohio-122, ¶ 28 (2d Dist.), quoting *Carr v. Home Owners Loan Corp.*, 148 Ohio St. 533, 540 (1947). The final judgment in a foreclosure proceeding "will determine the rights of all the parties in the premises sought to be foreclosed upon." *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 270 (1988); *U.S. Bank Natl. Assn. v. Conrad*, 2018-Ohio-994, ¶ 15 (2d Dist.). Upon the entry of a judgment of foreclosure, the trial court must order the property to be sold. *Conrad* at ¶ 15, citing R.C. 2323.07. A judgment and decree of foreclosure is a final appealable order. *Id*. at ¶ 14.

{¶ 15} The second part of the process involves the sale of the property, culminating in a confirmation of sale and dispersal of the sale proceeds. *Conrad* at ¶ 14. "The primary purpose and goal of a foreclosure sale is to protect the interests of the mortgagor-debtor while, at the same time, ensuring that the secured creditors receive payment for unpaid debts." *Young* at ¶ 30. Prior to confirming the sale of the property, the trial court must determine that the sale of property was made, in all respects, in conformity with statutory requirements. R.C. 2329.31; *see CitiMortgage, Inc. v. Roznowski*, 2014-Ohio-1984, ¶ 40 ("The confirmation process is an ancillary one in which the issues present are limited to whether the sale proceedings conformed to law."). The court may stay confirmation of the sale "to permit a property owner time to redeem the property or for any other reason that it

5

determines is appropriate." R.C. 2329.31(A). An order confirming the sale of foreclosed property is also a final appealable order. *E.g.*, *Conrad* at ¶ 14.

{¶ 16} Generally, we review a trial court's decision to confirm a judicial sale for an abuse of discretion. *Sutton Funding L.L.C. v. Herres*, 2015-Ohio-3609, ¶ 17 (2d Dist.). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 17} We find no abuse of discretion in the trial court's decision to confirm the sale of the Barnside property. Kilpatrick's appellate brief did not identify any errors in the sale proceedings or the order of sale, and none are apparent. Her reply brief highlights that the name of the purchaser differed from the name of the entity that received title to the property. However, the trial court's judgment was consistent with the information provided to it regarding the results of the sale. The "return of private selling officer on writ for order of sale and costs report," which was filed with the trial court on October 8, 2025, informed the court that the property was bought by Daniel Pamer and that title was to be vested in the Wenrick Family Limited Partnership. Similarly, the trial court's judgment confirming the sale identified the buyer as Pamer and ordered that the property be conveyed to the Wenrick Family partnership. Kilpatrick's alleged discrepancy is unfounded.

{¶ 18} Kilpatrick's arguments as to why she should be allowed to possess the Barnside property pending appeal are moot, given that she failed to post a bond and has been evicted from the premises. Her additional arguments as to whether Lakeview was the proper party to enforce the note and mortgage are not properly before us; those claims should have been raised in a direct appeal from the judgment and decree of foreclosure and are now barred by res judicata. Finally, nothing in the record supports Kilpatrick's apparent

6

contention that she redeemed the property as provided in the judgment and decree of foreclosure.

**{¶ 19}** Kilpatrick's assignment of error is overruled.

### III. Conclusion

**{¶ 20}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HUFFMAN, J., concur.